UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Olivin Gonzalez BARCO,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civ. No. 2:15-0106 (KM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Olivin Gonzalez Barco brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Title II Disability Insurance Benefits ("DIB"). Barco alleges that he suffers from lumbar back disc disease. (R.[1] 125, ECF No. 5)

For the reasons set forth below, the ALJ's decision is AFFIRMED.

### I. BACKGROUND

Barco seeks to reverse an ALJ's finding that he was not disabled from November 2, 2010 through the date of the ALJ's decision, April 5, 2013. (R. 21–27)

Barco initially applied for DIB benefits on November 2, 2010. That claim was first denied on October 4, 2011, and denied again on reconsideration on November 2, 2010. On January 17, 2012, Barco filed a request for a hearing. On December 19, 2012, a hearing was held, at which Barco was represented by counsel and testified with the aid of a

---

[1] "R." refers to the pages of the administrative record filed by the Commissioner as part of her answer. (ECF No. 6)

Spanish interpreter. On April 5, 2013, Administrative Law Judge ("ALJ") Michal L. Lissek denied Barco's application for DIB benefits. On November 6, 2014, the Appeals Council denied Barco's request for review, making the ALJ's decision the final decision of the Commissioner. Barco now appeals that decision.

## II. DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). A claimant must show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

### a. Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation and citation omitted).

3

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Commissioner*, 235 F. App'x 853, 865–66 (3d Cir. 2007).

### b. The ALJ's decision

The ALJ concluded that from November 2, 2010, through April 5, 2013, Barco was not disabled. ALJ Lissek's determinations may be summarized as follows.

At step one, the ALJ determined that Barco had not engaged in substantial gainful activity since November 2, 2010, his alleged disability onset date. (R. 23)

At step two, the ALJ found that Barco has the following severe impairments: "sequelae of a work accident include lumbar disc disease and obesity." (*Id.*)

At step three, the ALJ determined that none of Barco's impairments or combinations of impairments met or medically equaled

the severity of one of the listed impairments in 20 C.F.R. Pt. 404 Subpt. P, App. 1 (the "Listings"). (*Id.* 23–24)

Then the ALJ found that during the relevant time period, Barco "ha[d] the residual functional capacity ["RFC"] to perform the full range of light work as defined in 20 C.F.R. 404.1567(b)." (*Id.* 24–26)

At step four, the ALJ found that based on his RFC, Barco was unable to perform any past relevant work. (*Id.* 26)

The ALJ determined since Barco was born on January 28, 1975 and was 35 years old, he was categorized as a "younger individual age 18–49, on the disability onset date." (*Id.*)

The ALJ found that Barco was illiterate in English. (*Id.*)

The ALJ also found that "[t]ransferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*)

At step five, the ALJ considered Barco's "age, education, work experience, and residual functional capacity," and found that "there are jobs that exist in significant numbers in the national economy that [Barco could] perform." (*Id.* 26–27) As noted above, such a finding at step five requires that benefits be denied.

### c. Barco's appeal

Barco argues that the ALJ (1) erred in the step three analysis; (2) erred in the RFC determination; and (3) erred by not consulting a vocational expert at step five. I disagree and find that substantial evidence supports the ALJ's conclusions.

### d. Analysis

#### i. *ALJ's step three analysis*

Barco argues that the ALJ erred in the step three analysis by (1) erroneously concluding that Barco's back pain does not meet the criteria for Listing 1.04A; (2) rejecting the May 2012 report of Dr. Tiger; (3) not considering the August 2013 evaluation of Dr. Tiger; and (4) not considering Barco's obesity in combination with his back problems. (Pl. Br. 10–23) I find no error in the ALJ's step three analysis.

1. Listing 1.04 criteria

First, Barco argues that his back pain meets the requirements of Listing 1.04. *See* Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. Barco recounts isolated medical findings from Dr. Tiger and Dr. Potashnik, but provides no explanation as to how these findings meet the requirements of Listing 1.04. This Court is not permitted to reweigh such medical evidence. And it is clear that the ALJ had substantial evidence for the step three conclusions. Specifically, the opinions from Dr. Giordano and Dr. Potashnik support the ALJ's step three conclusion that Barco cannot meet the Listing 1.04 requirements of proving (A) nerve root compression; (B) spinal arachnoiditis; or (3) lumbar spinal stenosis. (R. 23–35, 189–213, 233–43; Listing 1.04) These opinions also support the ALJ's conclusion that Barco's back pain has not "resulted in an inability to ambulate effectively." (R. 23) Dr. Giordano opined that Barco had done "exceptionally well" post-surgery and specifically instructed Barco to "increase his exercises and activities." (*Id.* 189–91) Dr. Potashnik concluded that in an eight hour day, Barco could sit for eight hours, stand for six hours, and walk for eight hours total. (*Id.* 236) The ALJ properly relied on these opinions in the step three analysis.

### 2. Dr. Tiger's May 2012 report

Second, Barco argues that the ALJ improperly rejected the May 2012 report of Dr. Tiger. (R. 225–26)

An ALJ is free to credit one medical opinion over another, provided that the ALJ considers all of the evidence and gives reasons for discounting the evidence he or she rejects. *See Diaz v. Commissioner of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ . . . may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."); *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (citations omitted) (An ALJ may "properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). In this case, the ALJ analyzed Dr. Tiger's report and gave reasons for assigning no weight to it. The ALJ noted that Dr. Tiger's opinion was inconsistent with other medical opinions from Dr. Giordano (Barco's treating physician) and Dr. Potashnik and that Dr. Tiger's report was likely biased, as it was prepared for the purpose of Worker's Compensation litigation.[2] (*Id.* 25–26)

### 3. Dr. Tiger's August 2013 report

Third, Barco argues that the ALJ erred by not considering the August 23, 2013 report from Dr. Tiger. (Pl. Br. 10, 16, 31; R. 11–13 (Dr. Tiger's report)) This report was written after the ALJ rendered the April 5, 2013 decision.

"[E]vidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence."

---

[2]   For instance, Dr. Tiger opined that Barco "was never rehabilitated" post-surgery, whereas Dr. Giordano stated that Barco recovered "exceptionally well." (R. 225, 189–91) Also, Dr. Tiger said Barco could not "do anything of an exertional nature," whereas Dr. Giordano specifically instructed Barco to "increase his exercises and activities." (*Id.*)

7

*Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). "[W]hen the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ." *Id.* at 593.

Barco has not attempted to demonstrate that Dr. Tiger's additional report is new and material or that there was good cause for not presenting a second report from Dr. Tiger to the ALJ. In any case, Dr. Tiger's August 2013 report is largely similar to his May 2012 report, in which he opined that Barco's back surgery resulted in 85% of partial total disability. (R. 225–26) The ALJ analyzed this report and gave it no weight, as it was inconsistent with the other medical opinions in this case and was prepared for the purpose of litigation. (*Id.* 25–26) Dr. Tiger's August 2013 report was similarly prepared for the purpose of litigation and expresses many of the same opinions as the May 2012 report. (*Id.* 11–13) Moreover, Dr. Tiger's August 2013 report includes statements regarding Barco's condition on August 23, 2013, which is after the time period the ALJ considered. Remand based on this new report is therefore inappropriate.

4. Barco's obesity

Fourth, Barco argues that the ALJ did not sufficiently analyze his obesity. (Pl. Br. 12, 17–23) To the contrary, the ALJ considered Barco's obesity in combination with Barco's back impairment at step three. (R. 24) It was not error to consider obesity only in combination with Barco's back impairment, as there is no separate listing for obesity. Rather, the regulations provide that obesity is to be analyzed in combination with a claimant's other impairments. SSR 02-1p, 2000 WL 628049 (S.S.A. Sept. 12, 2002).

Moreover, Barco did not list obesity as one of the physical impairments that limited his ability to work in his application for

8

disability benefits. (R. 125) And Barco does not offer any record citations to document any effects of his obesity or explain in what way obesity should affect any of the steps of the analysis. *See* SSR 02-1p, 2000 WL 628049 at *6 (S.S.A.) (An ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments."); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (concluding that remand was not appropriate even though an ALJ did not specifically mention a claimant's obesity because (1) the claimant had not explained how obesity would affect the ALJ's five-step analysis; (2) the claimant only generally alleged that her obesity "makes it more difficult for her to stand, walk and manipulate her hands and fingers"; and (3) the ALJ's based his opinion on "voluminous medical evidence.").

For the foregoing reasons, the ALJ's step three analysis is supported by substantial evidence.

### ii. ALJ's RFC evaluation

Barco argues that the ALJ erred in the RFC determination by (1) improperly concluding that Barco was capable of performing light work and (2) improperly evaluating Barco's subjective complaints of pain.[3] (Pl. Br. 23–31) I find that substantial evidence supports the ALJ's RFC analysis.

#### 1. Requirements of light work

The ALJ found that during the relevant time period, Barco "ha[d] the residual functional capacity ["RFC"] to perform the full range of light work as defined in 20 C.F.R. 404.1567(b)." (R. 24–26) This was not in error. Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a

---

[3] Barco also reiterates his arguments about Dr. Tiger's reports and his obesity. As explained in the preceding section, I find these arguments unpersuasive.

9

> job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567. Dr. Giordano (Barco's treating physician) and Dr. Potashnik both opined that Barco was capable of doing the activities described in this definition. Specifically, Dr. Giordano noted that Barco ambulated without a limp, was capable of standing erect, had a good prognosis for recovery, and had good strength in all motor groups. (R. 189–213) Dr. Giordano further opined that no further treatment was needed for Barco as of November 2, 2010, that Barco should practice proper fitness, and that Barco was capable of doing a "lighter profession" (as opposed to Barco's previous work, which was physically demanding). (*Id.* 189) The only restrictions Dr. Giordano placed on Barco were to avoid repetitive bending and lifting over forty pounds. (*Id.*) Dr. Potanshik noted that Barco walked with a normal gait, drove, could lift up to twenty pounds frequently, could sit and walk for eight hours in an eight hour day, and could stand for six hours in an eight hour day. (*Id.* 233–43) These opinions support the ALJ's conclusion that Barco was able to perform the full range of light work.

### 2. Barco's subjective complaints of pain

Barco also questions the ALJ's evaluation of his subjective complaints of pain. (Pl. Br. 27–31)

Social Security Regulation 96-7P provides:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant

> evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

Rather, the ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b).

The ALJ found that Barco's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements regarding the intensity, persistence, and limiting effects of him symptoms were not entirely credible. (R. 24–26) Specifically, the ALJ noted that the medical evidence did not support Barco's allegations, and that Barco's own reported activities of daily living were inconsistent with his claim of total disability. (*Id.* 26) Drs. Giordano and Potashnik rendered opinions that were consistent with Barco's ability to perform light work, as explained above. And Barco himself reported that he could lift up to forty pounds; that he spends his day showering, cooking, walking around the block, and watching television; that he is able to do laundry, household repairs, ironing, and landscaping; and that he can drive and shop for groceries. (*Id.* 139–46) The ALJ's evaluation of Barco's subjective complaints of pain is thus supported by substantial evidence.

### iii. *ALJ's step five determination*

Barco argues that the ALJ should have consulted a vocational expert at step five. (Pl. Br. 31–38) Under the circumstances, the ALJ was not required to do so.

At step five, the ALJ used the Medical-Vocational Guidelines ("Grids") to find that there were jobs in the national economy that Barco could have performed. (R. 26–27) He did not consult a vocational expert.

11

The Third Circuit has instructed that an ALJ may rely on the Grids and need not consult a vocational expert when a claimant has only exertional limitations.

> Exertional limitations are those that affect the "ability to meet the strength demands of jobs ... for sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 404.1569a(a). Nonexertional limitations are any other limitations, including . . . postural limitations . . . and . . . environmental limitations. *Id.*; SSR 96–9p. When a claimant has solely exertional limitations, his disability status is determined by the Medical–Vocational Guidelines "without reference to additional evidence." [*Sykes v. Apfel*, 228 F.3d 259, 269 (3d Cir. 2000)].

*See Breslin v. Comm'r of Soc. Sec.*, 509 F. App'x 149, 154 (3d Cir. 2013); *see also Raymond v. Comm'r of Soc. Sec.*, No. CIV. 2:12-05660 WJM, 2014 WL 1783098, at *4 (D.N.J. May 5, 2014) (applying *Breslin* and concluding that an ALJ did not need to consult a vocational expert even when a claimant has non-exertional limitations, provided that an occupational base was not significantly eroded by those non-exertional limitations).

The ALJ correctly held that Barco retained the RFC to do the full range of light work as defined in 20 C.F.R. 404.1567(b). Because Barco suffers only from exertional limitations, the ALJ then appropriately relied on the Grids at step five. The ALJ was not required to consult a vocational expert.

### III. CONCLUSION

For the foregoing reasons, the ALJ's decision is AFFIRMED.

Dated: August 28, 2015

_____
**KEVIN MCNULTY**
**United States District Judge**